## BYRNE v. KERNALS *et al.*

No. 6090.   Opinion Filed February 15, 1916.

(155 Pac. 587.)

1. **INDIANS—Allotment of Deceased Creek Indian—Descent and Distribution.** Johnson Kernals was the infant son of George Kernals, an enrolled Creek Indian by blood, and his wife, Retta Kernals, a Seminole by blood. Johnson Kernals was born October 25, 1900, and died June 14, 1901, intestate, without issue, leaving his father and mother as his only survivors. The land involved was selected and allotted "to the heirs of Johnson Kernals, deceased," on the 27th day of August, 1904, and patent issued therefor on the 31st day of October, 1904. Thereafter there was born to George and Retta two other sons, Harry and Benjamin F. D. Kernals, the plaintiffs herein. The father, George Kernals, died intestate on the 12th day of March, 1906, leaving surviving him his widow, Retta, and his two sons, plaintiffs herein. **Held,** that under the provisions of sections 6 and 7 of the Supplemental Treaty with the Creek Tribe of Indians, approved by act of Congress on June 30, 1902 (32 Stat. 501, c. 1323), ratified by the Creek Indians July 25, 1902, and made effective by the proclamation of the President August 8, 1902, the allotment, including the land involved, was patented to George Kernals (not by name) as the father and only heir of Johnson Kernals, deceased, and upon the death of George Kernals the land descended directly to the plaintiffs herein as his sons and only heirs, thereby leaving perfect title in them, subject only to the dower interest in Retta Kernals, his surviving widow.

2. **INDIANS—Lands—Dower—Assignability.** Under the statutes of Arkansas, put in force in the Creek Nation by section 6 of the Supplemental Treaty above referred to, the widow's right of dower, prior to assignment, is not an estate in the lands, but a mere chose in action, and is not at law assignable to a person not vested with the fee.

3. **DOWER—Transfer of Dower Before Assignment—Evidence.** A right of dower, before assignment, cannot be transferred by the widow to any other than the heir at law or person holding the legal title to the land under the husband, so as to vest in such other person a right of action therefor, or enable him to defend against ejectment brought by the administrator or heirs at law; and such a deed executed by her before assignment of

dower is not admissible in evidence to establish title or right of possession in her vendee.

4.    **SAME.** The purchaser of a widow's dower interest in the lands of her deceased husband, before the same has been set off to her, cannot avail himself of such title or interest in an action of ejectment brought against him by the heirs.

5.    **EJECTMENT—Proof of Possession—Title.** In ejectment, proof of possession under claim of title by the plaintiff's ancestor is sufficient to entitle the plaintiff to recover, unless the defendant shows a better title, and the burden is on the defendant to prove a superior title or right of possession.

(Syllabus by Robberts. C.)

*Error from District Court, Creek County;*
*Wade S. Stanfield, Judge.*

Ejectment by Harry Kernals and another against J. L. Byrne. Judgment for plaintiffs, and defendant brings error. Affirmed.

*J. L. Byrne* and *S. H. Sornborger,* for plaintiff in error.

*McDougal & Lytle* and *F. H. Reed,* for defendants in error.

Opinion by ROBBERTS, C. This is an action in ejectment, brought by Harry and Benjamin F. D. Kernals against J. L. Byrne to recover possession of and to quiet title to forty acres of land in Creek county, formerly in what was known as the Creek Indian Nation. The pleadings and evidence authorize and fully justify the following statement of the case. The land was a part of the allotment of Johnson Kernals, who was the infant son of George Kernals, an enrolled Creek Indian, by blood, and his wife, Rétta Kernals, afterwards McGirt, a Seminole by blood. Johnson K. was born October 25, 1900, and died June 14, 1901, intestate, without issue, leaving his father and mother as his only survivors. The land involved was selected and allotted "to the heirs of Johnson Kernals, deceased," on the

27th day of August, 1904, and patent issued therefor on the 31st day of October, 1904. Thereafter there was born to George and Retta two other sons, Harry and Benjamin F. D. Kernals, the plaintiffs in this case. The father, George K., died intestate on the 12th day of March, 1906, leaving surviving him his widow, Retta, and his two sons, plaintiffs herein. The plaintiff in error, J. L. Byrne, claims title, and holds possession by mesne conveyances from Retta Kernals (McGirt), and his right to said land must be settled and determined solely by such title, or right of possession, as he obtained from her. It will certainly be conceded that she could convey no better title than she had, nor could she transfer a better right of possession than that by which she held. This status of the case presents three propositions: (1) What title or right of possession did Retta have in and to the land? (2) Was she competent and could she convey any right therein to any person other than the plaintiffs? (3) Would a conveyance by her to the defendant, under the facts set out herein, defeat the plaintiffs' action for possession?

Section 7 of the Supplemental Treaty with the Creek Tribe of Indians, approved by the Act of Congress of June 30, 1902, ratified by the Creek Nation July 26, 1902, and made effective by the proclamation of the president August 8, 1902, provides:

"7. All children born to those citizens who are entitled to enrollment as provided by the Act of Congress approved March 1, 1901 (31 Stat. L. 861), subsequent to July 1, 1900, and up to and including May 25, 1901, and living upon the latter date, shall be placed on the rolls made by said commission. And if any such child has died since May 25, 1901, or may hereafter die before receiving his allotment of lands and distributive share of the funds of the tribe, the lands and moneys to which he would be entitled if living shall descend to his heirs as herein pro-

vided and be allotted and distributed to them accordingly."
(32 Stat. 501.)

It is admitted by all that George Kernals, the father
of Johnson Kernals, was an enrolled citizen of the Creek
Nation. As before stated, Johnson Kernals was born Oc-
tober 25, 1900, and died June 14, 1901, so it is plain that
he comes within the provision or requirement of being
born "subsequent to July 1, 1900, and was living up to and
including the 25th day of May, 1901"; and coming clearly
within the provisions of the act, therefore, under that act,
he was entitled to be, and was, placed on the rolls made
by the commissioners. It is also admitted that Johnson
died after May 25, 1901, before receiving his allotment
of lands, or distributive share of the funds of the Creek
Tribe. The provision for succession is that:

"The lands and moneys to which he would be entitled
if living shall descend to his heirs, *as provided herein,* and
be allotted and distributed to them accordingly."

The phrase "as provided herein" means the manner or
course of descent, as provided in that act, which is found
in section 6 thereof, and is as follows:

"6. The provisions of the Act of Congress approved
March 1, 1901 (31 Stat. L. 861), in so far as they provide
for descent and distribution according to the laws of the
Creek Nation, are hereby repealed and the descent and dis-
tribution of land and money provided for by said act shall
be in accordance with chapter 49 of Mansfield's Digest of
the Statutes of Arkansas, now in force in the Indian Ter-
ritory: Provided, that only citizens of the Creek Nation,
male and female, and their Creek descendants, shall inherit
lands of the Creek Nation; and provided further, that if
there be no person of Creek citizenship to take the descent
and distribution of said estate, then the inheritance shall
go to noncitizen heirs in the order named in said chap-
ter 49."

Evidently this section puts in force the Arkansas law of descent and distribution, limiting the right of inheritance to citizens of the Creek Nation and their Creek descendants, with the exception that, where "there be no person of Creek citizenship to take the descent and distribution of the estate, then the inheritance shall go to noncitizen heirs named in said chapter 49," of Mansfield's Digest of the Laws of Arkansas.

It is conceded that the widow, Retta, was a noncitizen of the Creek Nation, and because thereof she was not included within the terms of the certificate of allotment and government patent, granting the land involved to "the heirs of Johnson Kernals, deceased."

Under the provisions of the statutes above referred to, the allotment, including the land involved, was patented to George Kernals (not by name) as the father and only heir of Johnson Kernals, deceased, and upon the death of George K. the land descended directly to the plaintiffs herein as his sons and only heirs, thereby leaving perfect title in them, subject only to the dower interest of Retta K., his surviving widow. Neither the pleadings nor the evidence make any claim that the dower interest of the widow had been assigned to her, nor that the land was occupied by her in any way. On the other hand, the plaintiff in error alleges that he is in possession of the premises.

The case was tried to a jury, and at the conclusion of the evidence counsel for plaintiffs moved the court to instruct the jury "to return a verdict for plaintiffs and against the defendant for the possession of the land, leaving the only question to be determined by the jury the amount of damages to which plaintiffs would be entitled," which motion was sustained and the following instructions given:

"The court is of the opinion that the Supreme Court of this state has settled this question involved in this case; that under the decisions of the Supreme Court of this state, under the evidence in this case, that Harry Kernals and Benjamin F. Davis Kernals are the sole and exclusive owners of the real estate in this case, and the jury are instructed to return a verdict in favor of said plaintiffs as to the possession of the land in question, and to proceed to their jury room to determine what the reasonable rental value of the premises in question during the occupancy by the defendant, J. L. Byrne, is. Upon this question the burden of proof as to the fair, reasonable rental value of the land is upon the plaintiffs; you will determine from all the evidence in the case what the fair, reasonable rental value of the premises is, under the proofs in this case."

Verdict was accordingly returned against the defendant, fixing the damages at $40. The motion for new trial being overruled, judgment was rendered in favor of plaintiffs for the possession of the land and damages. To all of which exceptions were saved and appeal lodged in this court.

Counsel for plaintiff in error contend in their brief that they have, under the pleadings, "simply an ordinary action of ejectment for the recovery of the possession of this 40-acre tract of land," and that "plaintiffs must recover, if at all, on the strength of their own right, and not on the weakness of the defendant's right." In support of this contention counsel cite *Mitchell v. Humphrey*, 36 Okla. 711, 129 Pac. 744, wherein it is said:

"At common law, in an action of ejectment, the plaintiff seeking to recover lands occupied by another must recover upon the strength of his own title, rather than the weakness of the title of his adversary."

That doctrine is too well settled to require comment, and will be the rule applied herein. In this case plaintiffs

are standing on the strength of their own title, and to our mind, they are perfectly secure therein. But counsel contend that their title and right of possession is subject and junior to the right of possession of the defendant by virtue of his holding under the conveyance of Retta K., which includes her right of dower and right of possession thereunder. This contention cannot be sustained, for the reason that her right of dower had not been assigned, and was therefore not transferable or alienable.

Bearing in mind that there had been no assignment of dower in the land involved, and that the legal title was in the plaintiffs in this case, by inheritance from their father, we call attention to an early case of the Supreme Court of Arkansas *(Carnall v. Wilson,* 21 Ark. 62, 76 Am. Dec. 351), wherein it is said:

"The widow may relinquish the right of dower, before assignment, to a person holding the legal title, but she cannot transfer it to a stranger so as to confer on him a right of action for the dower, or enable him to defend against ejectment brought by the administrator or heirs at law."

Again, in the syllabus of *Jacoway v. McGarrah,* at page 347 of the same report (21 Ark.), the court says:

"A right of dower, before assignment, cannot be transferred by the widow, to any other than the heir at law or person holding the legal title to the land under the husband, so as to vest in such person a right of action therefor."

In the body of the opinion the court uses this language:

"In *Carnall v. Wilson,* 21 Ark. 62 (76 Am. Dec. 351), this court held that the right of dower, until it is assigned to the widow, is a mere chose in action; and though the widow may relinquish the right to the heirs at law, or to one holding the legal title to the lands under the husband,

e⁺c., and such relinquishment will bar her right to recover dower, yet she cannot alien or transfer her claim to dower so as to vest in any other person the right of action therefor."

In the second and third paragraphs of the syllabus in *Jacks v. Dyer*, 31 Ark. 334, we find the following:

"2.  In ejectment, proof of possession, under claim of title by the plaintiff's ancestor, is sufficient to entitle plaintiff to recover, unless the defendant shows a better title.

"3.  The widow cannot transfer her estate by dower in the land of her deceased husband before the same has been set apart to her; and a deed executed by her before assignment of dower is not admissible in evidence to establish title in her vendee."

In the body of the opinion the court says:

"In the case under consideration, plaintiffs claim, as heirs of Pleasant Dyer, who died in possession of the lot in controversy, and it was not strictly necessary for them to have introduced evidence of a chain of title from the proprietors of the town to their ancestors; proof of such actual possession, under a claim and color of title, was sufficient to entitle the plaintiffs to recover until a better title was shown by defendants.

"The title set up by defendants is derived from T. M. Jacks, who claimed to have purchased of the widow of Dyer, and also of a purchase of the lot, at tax sale, by Jacks.

"As regards the quitclaim deed from Striker and wife to Jacks, the wife being the widow of Dyer, the only interest which either of them could have was the dower interest of the wife, which, never having been set apart to her as such, was not transferable. *Carnall v. Wilson*, 21 Ark. 62 (76 Am. Dec. 351); *Jacoway v. McGarrah*, 21 Ark. 347. The deed from Striker and wife was therefore properly excluded from the jury."

In *Barnett v. Meacham*, 62 Ark. 313, 35 S. W. 533, the first paragraph of the syllabus is as follows:

"If a widow conveys her dower interests before it is assigned to her, the heir may recover the land from her vendee."

In the opinion, the court, speaking through Mr. Justice Hughes, says:

"It has been recently decided in this court that the conveyance by a widow of her right of dower in the lands of her deceased husband, before the assignment of her dower, confers upon the alienee no right which he can enforce at law, but that he may, in equity, have her dower set aside and assigned to him. A widow, before the assignment of her dower, may occupy and hold the mansion house and farm attached free of rent till her dower is assigned. But, if she abandons the possession, the heir may enter and occupy the premises, subject to her right to have dower assigned. 'She may occupy and cultivate the land herself, or allow another to do it for her.' She need not remain on it in person, 'for it may be she could only derive a support from the premises by renting them.' *McReynolds v. Counts*, 9 Grat. (Va.) 242; *Oakley v. Oakley*, 30 Ala. 131; *Padgett v. Norman*, 44 Ark. 490. 'But this (quarantine) right to occupy the premises, or to receive the profits for her maintenance, is so far personal to the widow that it cannot be transferred to another; and if, before her dower is assigned, she makes a conveyance of her interest, the heir may recover in ejectment against the alienee.' 2 Scribner, Dower, p. 64; *Wallace v. Hall*, 19 Ala. 367; *Wallis v. Doe*, 2 Smedes & M. (Miss.) 220. When Mrs. Ward transferred her interest to Meacham, and abandoned the premises, a right of action in ejectment against Meacham accrued to the appellant."

The general rule laid down in Cyc. vol. 14, p. 964, is as follows:

"Prior to the assignment of dower the widow's right is not an estate in the lands, but a mere right of action,

and is not at law assignable to a person not vested with the fee."

And on page 965 we read:

"A purchase of the widow's dower interest before assignment and possession of the lands by the purchaser is no defense to an action of ejectment brought against him by the heirs."

The foregoing seems to be the universal rule, and especially the well-established doctrine in the State of Arkansas, from whence the statute under consideration was taken. Such being the state of the case, it follows that the attempted conveyance of Retta Kernals (McGirt) did not give to the defendant, Byrne, a *prima facie* right of possession superior to that of the plaintiffs, and the court committed no error in directing a verdict in favor of plaintiffs for the possession of the premises involved.

The judgment is affirmed.

By the Court: It is so ordered.